DECISION
{¶ 1} Plaintiffs-appellants Accu-Med Services, Ltd., and its owners, Gerald McKenzie, Gregory Brown, Myron Borth, and Barry Parnell, appeal from the trial court's order confirming an arbitration award and denying their motion for summary judgment. They raise five assignments of error for our review. Because we find no merit in their assignments of error, we affirm the judgment of the trial court.
 {¶ 2} In November 1996, Accu-Med and its owners entered into an asset purchase agreement with defendant-appellee, Omnicare, Inc., whereby Omnicare, through its subsidiary, SMA Acquisition Corp., purchased the assets of Accu-Med. The agreement contained an arbitration clause, which provided that any claim or dispute arising in connection with the performance or breach of the agreement would be submitted to arbitration. In July 1998, Accu-Med and its owners entered into an amended asset purchase agreement with Omnicare and its subsidiary Accu-Med Services, Inc. Under Section 2.1b of the amendment, Omnicare agreed to pay Accu-Med Services, Ltd., specific sums upon the completion of certain "Earnout" provisions related to the release of software used in the healthcare industry. The amended agreement, provided in relevant part, as follows:
 {¶ 3} "Section 2.1(b) of the Agreement is hereby amended and restated as follows:
 {¶ 4} "2.1(b) Purchaser shall pay to Seller in Immediately Available Funds the amounts set forth below if and when the Purchaser achieves the targets as set forth below:
 {¶ 5} "Earnout Provision I. Purchaser shall pay to Seller $400,000 within 30 days after latest of the date that Purchaser fully Releases the Accu-Care™ Clinical Management Software for Windows® and the Purchaser fully Releases the Accu-Count Financial Management Software for Windows®"
 {¶ 6} The amended agreement specifically defined the term "Release" as it was used in the context of Earnout I as "the official release of a program and documentation for use by the public in such final form and condition as it is customary in the software industry."
 {¶ 7} Sometime later, a dispute arose among the parties with regard to Accu-Med and its owners' right to be paid the $400,000 specified by Earnout Provision I. Accu-Med and its owners subsequently filed a demand for arbitration with the American Arbitration Association. In March 2001, Accu-Med, its owners, and Omnicare engaged in a three-day arbitration to resolve the dispute.[1] Although several people testified, the arbitration proceedings were not transcribed. On April 17, 2001, the arbitrator issued an award that provided the following, in pertinent part:
 {¶ 8} "7. Respondent's evidence is that the Accu-Count™ Financial Management Software for Windows® is currently being Beta tested and Respondent expects to fully release the Accu-Count™ software during the year 2001.
 {¶ 9} "8. The parties to the arbitration agree that the Accu-Care™ Clinical Management Software for Windows® has been Released and the Arbitrator finds that upon release of the Accu-Count™ software, which respondent says will occur, the Claimants will then be entitled to the payment under Earnout Provision I, of $400,000 within 30 days of the Release of the Accu-Count™ software.
 {¶ 10} "9. The Arbitrator further finds that Claimants are not entitled to recover under Earnout Provision I until the Accu-Count™ software is Released. The Claimants shall be paid the amount due under Earnout Provision I, $400,000, within 30 days of the Release of the Accu-Count™ software.
 {¶ 11} "12. Since there are no payments due at this time to Claimants, Claimants are not entitled to any interest, provided that Respondent makes any payments that become due under Section 2.1(b) within the 30 days following the completion of the Release or the integration and installation requirements set forth in Section 2.1(b). If for any reason Respondent fails to make the required payments within the 30 day period, then the Claimants are entitled to interest on any sums owed at the amount allowed by the Ohio Revised Code.
 {¶ 12} "13. If Respondent determines for valid business reasons not to Release the Accu-Count™ Financial Management Software for Windows®, then the Claimants shall take nothing under Earnout Provision I.
 {¶ 13} "14. The Arbitrator finds that the Respondent's actions to date in not releasing the Accu-Count™ Financial Management Software for Windows® * * * are justified by valid business reasons, and the Respondent is not required to pay the amount set forth in Earnout Provision I * * * at this time.
 {¶ 14} "17. Consistent with the parties' arbitration agreement which is set forth in Section 9.9 of the Asset Purchase Agreement, this Award is final and binding and judgment may be entered on this Award by any federal or state court having jurisdiction in this matter.
 {¶ 15} "18. The American Arbitration Association shall retain jurisdiction over this matter, consistent with the arbitration agreement of the parties, should future disputes arise."
 {¶ 16} On April 27, 2001, Accu-Med and its owners moved for clarification of the arbitration award. They provided the following reasons:
 {¶ 17} "Plaintiffs seek clarification that the Arbitration Award instructs that Plaintiffs are to be paid the $400,000 within 30 days of the release of the Financial Management Software for Windows that is currently being Beta tested no matter what name, Accu-Count or some other, is given to the Financial Management Software. As the Arbitrator correctly found, the evidence shows that Omnicare is Beta testing and intends to release this Financial Management Software. In his deposition, Omnicare's Pat Keefe appears to indicate that the name of this Financial Management Software remains `Accu-Count.' However, at arbitration Omnicare's Tom Ludeke indicated that this same Financial Management Software may be released and marketed under some other name.
 {¶ 18} "In order to avoid any confusion in the future if in fact the subject Financial Management Software is released under some other name, Claimants request that the Arbitrator clarify the Arbitration Award to make clear that upon release of the Financial Management Software under the Accu-Count name or some other name, the Claimants will then be entitled to the payment under Earnout Provision I, of $400,000 within 30 days of the release of the Accu-Count software."
 {¶ 19} In June 2001, the arbitrator responded to Accu-Med Services, Ltd., and its owners' request for clarification by stating that he "did not have the ability to clarify the Award as requested," but would "add by way of `dictum' that if [he] did have such authority, [he] would find that the award does not require clarification."
 {¶ 20} In December 2001, Accu-Med and its owners filed a complaint and motion to enforce the arbitration award pursuant to R.C. 2711.09. They claimed that Omnicare, through its subsidiary, Add-On, had released the Accu-Count Financial Management Software for Windows under a different name — "Add-On for Windows Financial Software" — and that they were, therefore, entitled to the $400,000 payment under Earnout Provision I, as set forth in the arbitrator's decision. They asked the trial court to confirm the arbitration award, to order Omnicare to pay them $400,000, as well as prejudgment and post-judgment interest, and to award them attorney fees and costs.
 {¶ 21} In June 2002, Accu-Med and its owners moved for summary judgment. They contended that the undisputed evidence showed that Omnicare had released the Accu-Count Financial Management Software for Windows under the name "Add-On for Windows Financial Software," and that they were, therefore, entitled to payment under Earnout Provision I. As support for their argument, they relied on the deposition testimony of Omnicare Vice President Patrick O'Keefe, which was introduced during the arbitration. O'Keefe had stated that Omnicare was beta testing the Accu-Count software and that the software would be released in the first quarter of the following year. Accu-Med contended that because the arbitrator had found that the financial management software under development at the time of the arbitration was Accu-Count, the product referred to in Earnout Provision I, and because the arbitrator had stated that the future release of that software would trigger Omnicare's obligation to pay Earnout I, Omnicare was prohibited from contradicting the arbitrator's finding that the financial management software under development at the time of the arbitration was anything other than Accu-Count.
 {¶ 22} Accu-Med and its owners also relied upon Omnicare's answers to its requests for admissions, as well as the affidavit of Myron Borth, to substantiate its claims. They contended that Omnicare had admitted that it had released the software that O'Keefe had identified in the arbitration as Accu-Count under the name "Add-On for Windows Financial Software." They further contended that Borth, who was employed as a quality assurance engineer in the quality control/quality assurance department at Accu-Med Services, Inc., a subsidiary of Omnicare, had stated in his affidavit that Accu-Med Services, Inc., was not developing or beta testing any other windows financial management software in the late winter and spring of 2001 besides the windows financial management software that had been identified by Omnicare and the arbitrator as Accu-Count. Borth further stated that Omnicare had released the software, which had been identified by O'Keefe at the arbitration as Accu-Count, under the name of another Omnicare subsidiary, Add-On, by September 19, 2001. Accu-Med and its owners claimed that because the undisputed evidence showed that Omnicare had released the Accu-Count software, they were entitled to the $400,000 payment under Earnout Provision I. They also asked the trial court to award them their expenses, including reasonable attorney fees, incurred to bring their motion to collect payment under Earnout Provision I. They contended that Omnicare had "failed, without good reason to admit and honor its obligation to pay Earnout I in response to a clear Rule 36 request for admission to do so."
 {¶ 23} In its memorandum opposing summary judgment, Omnicare argued that Accu-Med and its owners were trying to convert confirmation of the arbitration award, which had awarded them zero dollars, into a judgment for $400,000. Omnicare urged the trial court not to modify or vacate the arbitration award, but to confirm the award as written. Omnicare argued that Accu-Med and its owners were not entitled to the $400,000 payment under Earnout Provision I because the arbitration award had plainly stated that they were not entitled to recover under Earnout Provision I until the Accu-Count financial management software for Windows had been released. Omnicare argued that because the Accu-Count software had never been released in name or in substance, Accu-Med and its owners were not entitled to payment of the $400,000. Omnicare further argued that O'Keefe's arbitration testimony did not support Accu-Med's claims because O'Keefe had not been involved in the development of Accu-Count, and that he had mistakenly confused the Accu-Count software with the Add-On software. Omnicare also relied on the affidavit of Tom Ludeke to contradict Accu-Med and its owners' assertions that the Accu-Count software had been released. In his affidavit, Ludeke stated that he was the Omnicare executive who was in charge of bringing the Accu-Count financial management software for Windows to market. He further stated that the Accu-Count software was so thoroughly flawed that it could not be salvaged, and therefore, that Omnicare had begun developing an entirely different Widows-based financial product. Ludeke stated that the "Add-On for Windows Financial Management Software" that Omnicare had released was strictly the result of its effort to modify the existing Add-On financial software it had developed and was thus software that was totally unrelated to the Accu-Count financial management software. Consequently, Omnicare contended that Accu-Med and its owners were not entitled to summary judgment.
 {¶ 24} In October 2002, the trial court confirmed the arbitration award, but held that Accu-Med and its owners were not entitled to payment because the arbitrator had ruled that Omnicare did not owe them any money under Earnout Provision I. With respect to Accu-Med's demand for $400,000, the trial court held that the arbitrator could not and did not make factual findings with respect to events that had occurred after the conclusion of arbitration. Consequently, it concluded that it must construe those portions of the award where the arbitrator had discussed future possibilities as dicta. The trial court further determined that there was a genuine issue of material fact with respect to the meaning and significance of the post-arbitration facts upon which Accu-Med and its owners had based their demand for the $400,000 payment. Therefore, the trial court concluded that it was improper for Accu-Med and its owners to demand enforcement of the arbitration award, when enforcement would entail resolving disputed issues regarding events that had occurred after the arbitration. The trial court, accordingly, confirmed the award, but stated that "inasmuch as the arbitration award has ordered that no payments are due at this time, [it would take] no further action."
 {¶ 25} In their first assignment of error, Accu-Med and its owners now contend that the trial court erred by sua sponte vacating and/or modifying the provisions of paragraphs 7 through 9 and 12 of the arbitration award when it declared those paragraphs to be inconsequential.
 {¶ 26} The problem with this argument is that it proceeds from a false premise, namely that the trial court vacated and/or modified paragraphs 7 through 9 and 12 of the arbitration award. There is nothing in the trial court's decision to indicate that it had vacated or modified the arbitration award in any way. Rather, the trial court expressly stated that the award did not require either vacation or modification because the arbitrator had expressly defined the issues that had been submitted to him — whether Accu-Med and its owners were entitled to payment under Earnout Provisions I and II — and because the arbitrator had issued a final and definite award stating that because the Accu-Count financial management software had not been released, they were not entitled to payment under Earnout Provision I. The trial court reasoned that because the remaining propositions in the award were not final or definite in that they depended upon a further determination of the occurrence of events in the future, and because they did not affect the merits of the award, no vacation or modification was required. In its final judgment adopting its decision, the trial court specifically stated that it was confirming and adopting the arbitration award. Because the record does not support the assertion that the trial court vacated or modified the arbitration award, we overrule the first assignment of error.
 {¶ 27} In their second assignment of error, Accu-Med and its owners contend that the trial court erred as a matter of law in concluding that their claims were not based on the agreement, but on the arbitrator's award, and that they therefore had to engage in further arbitration to obtain payment under Earnout Provision I. They further argue that because both parties participated in litigation before the trial court on the issue of the release of the Accu-Count software, the parties waived their right to further arbitration of this issue. We disagree.
 {¶ 28} Because Accu-Med and its owners' claim for payment was based on the release of software that occurred after the completion of the arbitration hearing, and because the trial court correctly determined that the enforcement of the arbitration award meant entering a judgment for zero dollars, we cannot say that the trial court erred when it determined that the parties had to engage in further arbitration to determine whether the Accu-Count financial management software for Windows had been released in name or in substance. As a result, we overrule the second assignment of error.
 {¶ 29} In their third assignment of error, Accu-Med and its owners argue that the trial court erred as a matter of law in denying their motion for summary judgment because there was no genuine issue of material fact that the software that had been identified at the arbitration as Accu-Count had been released under the name Add-On.
 {¶ 30} When reviewing the grant or denial of a motion for summary judgment, this court employs the same standard used by the trial court.[2] We independently review the record to determine if summary judgment was appropriate. Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party."[3]
 {¶ 31} Here, Omnicare and Accu-Med presented the trial court with conflicting evidence that raised a genuine issue of material fact regarding whether Omnicare had released the Accu-Count software that was the subject of Earnout Provision I. Accu-Med and its owners presented the trial court with Borth's affidavit, in which he stated that Omnicare had released the Accu-Count software under the name of Add-On for Windows. Omnicare, on the other hand, presented Ludeke's affidavit in which he stated that Omnicare had not released the Accu-Count software in name or in substance. Given this conflicting evidence and the fact that the events giving rise to Accu-Med and its owners' claims for payment arose after the arbitration award had been issued, we cannot say the trial court erred in refusing to enter summary judgment on Accu-Med's claim for payment. As a result, we overrule the third assignment of error.
 {¶ 32} In their fourth assignment of error, Accu-Med and its owners contend that the trial court erred as a matter of law in denying them judgment in the amount of $400,000 plus statutory interest. In their fifth assignment of error, they argue that the trial court erred as a matter of law in denying their motion for attorney fees and costs. Because the trial court correctly held that Accu-Med and its owners were not entitled to payment under the arbitration award and because there was a genuine issue of material fact regarding whether the Accu-Count financial management software for Windows had been released, the trial court did not err when it denied Accu-Med and its owners' motions for judgment and for attorneys fees and costs. As a result, we overrule the fourth and fifth assignments of error, and affirm the judgment of the trial court.
Judgment affirmed.
Sundermann, P.J., Hildebrandt and Gorman, JJ.
[1] Accu-Med and its owners had also sought payment under Earnout Provision II.
[2] See Koos v. Central Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 641 N.E.2d 265.
[3] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.